## WALTER BROOKS BRADLEY, INC. *v.* N. H. YATES & CO., INC.

[No. 47, September Term, 1958.]

*Decided November 20, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ., and HENRY, J., Chief Judge of the First Judicial Circuit, specially assigned.

*Wallace Dann,* with whom were *Howard C. Bregel* and *Calvert R. Bregel* on the brief, for the appellant.

*Wilbur D. Preston, Jr.,* with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The plaintiff below appeals from a summary judgment for the defendant in a suit to recover damages that came about when water leaked through pipes in the radiant heating system defendant had recommended for the building of the plaintiff.

The second amended declaration alleges that in 1952 the plaintiff, a corporation engaged in business as an undertaker, had constructed a casket display building adjacent to its funeral home; that it wished a dust free heating system; that it had called on the defendant, N. H. Yates & Co., Inc., which was the Baltimore area distributor for the Bundy Tubing Company, a manfuacturer of tubing used in radiant heating systems; that defendant "undertook to design a system incorporating Bundy tubing in the system and give detailed advice on its installation"; that plaintiff relied solely on the advice defendant undertook to give and purchased Bundy tubing from a vendor to whom defendant had distributed it, and despite the fact that plaintiff "was not skilled in installing radiant heating systems", it alleges that it installed same with meticulous care in accordance with defendant's instructions.

The declaration further alleges that plaintiff did not use the heating system until three years after it had been installed, when, in November, 1955, it connected it with a heating unit; that after the heat had been on for twenty-four hours, it was discovered that the floor of the casket display room was flooded with water; that it was ascertained that the water came through the holes in the tubing "which had become corroded; the corrosion occurred as a result of the onslaught of water seepage percolating through the walls and floor slab (beneath the floor surface) of the display room building, and which through chemical degradation of the tubing walls by an action known as electrolytic corrosion attacked the outside of the tubing walls and progressed inwardly to the interior of the tubing walls creating holes"; that the holes and the flooding were caused by a violation by the defendant of a duty owed the plaintiff in failing to design a system that would not leak, "although well knowing that the tubing * * * would be subjected to the corrosive action of water seepage as above described because of the geographical and topographical location of the casket display room building * * *"; and that the defendant has failed to make good the loss and damage suffered.

A demurrer to this declaration was overruled. Pleas were then filed setting forth that the defendant did not commit the wrongs alleged, that the cause of action did not accrue within three years of the installation, and that at the time the alleged cause of action occurred in 1952 the defendant corporation was not in existence, not having been formed until December, 1953. A replication to the pleas said only that the cause of action did accrue within three years. No traverse was made to the allegation as to the time of formation of the corporation. Interrogatories were filed by the plaintiff, the answers to which stated that the cause of action accrued, if it accrued at all, when plaintiff bought the Bundy tubing in 1952; that on December 24, 1953, N. H. Yates & Co., Inc., the defendant corporation, was formed and took over all of the assets of the business of Nimrod H. Yates in exchange for the capital stock of the corporation and its demand note "subject to the liabilities set out" on a specified balance sheet; that in 1953 neither Nimrod H. Yates nor the corporation had any

knowledge of an existing or contingent liability to the plaintiff; and that Nimrod H. Yates was not an engineer but had been engaged in various facets of the heating business during all of his working life.

Plaintiff-appellant argues that the summary judgment was granted against it erroneously because a genuine dispute as to a material fact was presented to the trial court and because defendant's affidavits in support of its motion did not meet the requirements of the Maryland Rules in that affiant did not swear that he had personal knowledge of the facts relied on.

Actually, there was not below, and there is not here, any dispute as to the relevant facts. The parties agree that in 1952 plaintiff dealt with Nimrod H. Yates, who then traded as a sole proprietor; that Yates incorporated his business in 1953 and took corporate stock and a note for his assets and goodwill; that the new corporation expressly assumed only those liabilities of Yates set out in a designated balance sheet; that Yates died in May, 1955, and that his estate was duly administered in the Orphans' Court of Baltimore City, a final account having been passed in October, 1956, and that no claim was filed in the estate by plaintiff, which made its first demand in the matter on the defendant corporation in late 1955 or early 1956.

Plaintiff-appellant's primary contention that a disputed fact exists really is a claim that the trial judge wrongly applied the law when he found the defendant corporation had not in 1953 assumed whatever liability Yates individually then may have had to the plaintiff. The authorities are not in accord but the majority rule would seem to be that a transfer of a business to a corporation by an individual in return for stock of the corporation, gives rise to an assumption by the corporation of all of the liabilities of the business, including tort liabilities. We need not and do not decide the point (and thus the sufficiency of the affidavits becomes immaterial), nor the question of whether limitations began to run in 1952 when the advice was given, or in 1955 when the physical damage occurred and the plaintiff found out it was harmed, because we think the second amended declaration does not state a cause of action and that the demurrer to it should have been

sustained. The appeal by plaintiff brings up for review by this Court the correctness of the overruling of the demurrer to the declaration. Maryland Rule 345 d; *The Inter-City Land Company v. Baltimore County,* 218 Md. 80.

It may safely be assumed that on its third try plaintiff has set forth in its declaration all that in conscience it could to sustain its position. The gist of the claim is that a manufacturer's representative or area sales agent offered to show it how a system of radiant heating could be installed in an existing building that plaintiff had caused to be constructed; that plaintiff bought the piping recommended and itself installed it as suggested, but because plaintiff's building was porous, water seeped through its walls and floor over a three-year period and the constant exposure of the piping during this time to the water seepage caused electrolytic corrosion, which brought about holes in the piping; and that the defendant made its recommendations "well knowing" that the piping would be subjected to the corrosive action "because of the geographical and topographical location" of the building.

Negligence is not an abstraction but connotes actual conduct in relation to definite facts. If a plaintiff is to have a right of action in negligence against a defendant, there must exist a duty which is owed by that defendant to that plaintiff to observe that care called for by the circumstances, and a breach of that duty which caused damage. "Negligence is, therefore, absence of care according to the circumstances." *State v. Baltimore Contracting Company,* 177 Md. 1, 19. Although the declaration alleges that Yates knew the building would leak and damage the piping, the factual basis for the knowledge is limited to the specification that it was because of the location of the building. We think these allegations can amount to no more than a conclusion of the pleader that Yates should have known that the building would leak because of its location. If the facts alleged in the declaration would lead reasonable men to unite in the conclusion that defendant had violated no duty owed the plaintiff, the court may declare as a matter of law that the declaration is insufficient to state a cause of action despite words therein which allege negligence, as a conclusion of the pleader. In *East Brooklyn Box*

*Co. v. Nudling,* 96 Md. 390, 392 (quoted with approval in *American Oil Co. v. Wells,* 164 Md. 422, 427), the Court said: "Where the declaration clearly shows that the plaintiff was guilty of contributory negligence, advantage may be taken by demurrer; an allegation in the declaration that he used due care will not save the declaration from being bad." We find the allegations of fact in the declaration to go no further than saying that Yates was familiar with heating systems and recommended the one used for the building presented to him as the place to be heated, and that he should have known the building would leak and ruin the heating system. It is not said that an ordinarily skilled heating man would know that this new building had been so constructed that it would leak. There is no claim that Yates was an architect, an engineer or a contractor, or that he held himself out to be any of these; it is not said that the design of the heating system or the piping used in it was faulty or defective, except that it had been susceptible to "electrolytic corrosion" after three years' exposure to water coming through the walls and floor of the building in which it was. The plaintiff does not claim that Yates went further than to represent that he was competent to recommend a heating system using Bundy pipes. The declaration makes it plain that the system was installed in an existing building and that Yates did not profess to be qualified to give advice about the building or its qualities as a water repellent. He took the building as he found it as a site for the installation of a heating system. We think that reasonable minds would agree that neither his skill, experience, qualifications or representations required him to foresee that the building in which the piping was to be placed would act as a sponge and expose the piping which he recommended to extraordinary corrosion.

We said in *Martin G. Imbach, Inc. v. Tate,* 203 Md. 348, 357: "It is true, of course, that negligence may be gauged by the ability to anticipate danger. If the defendant in this particular work could not reasonably have foreseen any injury as a result of his act at the time he performed it, there was no negligence and no liability." See also *Sanders v. Williams,* 209 Md. 149; *Hensley v. Pirzchalski,* 212 Md. 471; *Stottle-*

*myer v. Groh,* 201 Md. 414, 424. *Restatement, Torts,* Sec. 289, deals with situations in which the actor should recognize that his conduct involves a risk of causing an invasion of another's interest and says that he should have such recognition if "(a) possessing such perception of the surrounding circumstances as a reasonable man would have, or such superior perception as the actor himself has, and (b) possessing such knowledge of other pertinent matters as a reasonable man would have or such superior knowledge as the actor himself has, and (c) correlating such perception and knowledge with reasonable intelligence and judgment would infer that the act creates an appreciable chance of causing such invasion." See *Holler v. Lowery,* 175 Md. 149, 158. We find in the declaration no allegation sufficient to charge Yates with the duty of knowing that the installation of the piping in the existing building set before him by the plaintiff would create an appreciable chance of causing the invasion of the property rights of the plaintiff. Prosser, *Law of Torts,* Sec. 49, pp. 274, 275, says: "If the defendant can foresee neither any danger of direct injury, nor any risk from an intervening cause, he is simply not negligent. * * * The limitation of liability to cover only those intervening causes which lie within the scope of the foreseeable risk, or have at least some reasonable connection with it, is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by the defendant are infinite, and that as a practical matter responsibility simply cannot be carried to such lengths."

It is generally held that a contractor or a subcontractor is not liable for defects in the work if he has merely carried out plans, specifications or directions given him, unless the plans or directions are so obviously dangerous or defective that no reasonable man would follow them. Prosser, work cited, Sec. 85, p. 519. We think there is enough analogy between that type of situation and the case before us, to make the reasoning of those cases persuasive, since the defendant here reasonably accepted as sound and well built the building which the plaintiff had constructed, as a proper site for the installation of the system it recommended; and there is noth-

ing in the declaration stating or showing that it was or should have been obvious to a heating sales representative that the building would not repel water. We think the defendant here cannot be charged with the errors of the plaintiff or its agents in the construction of the casket display building, any more than a contractor can be for the errors in the plans and specifications or the directions furnished him. See *Person v. Cauldwell-Wingate Co., Inc.*, 187 F. 2d 832 (2nd Cir., 1951); *Ryan v. Feeney & Sheehan Building Co.* (N. Y.), 145 N. E. 321. In the latter case the appeal was from a directed verdict. The defendant was a contractor putting up a building in accordance with plans and specifications furnished it. The plaintiff had called an architect who testified that it was obvious, looking at the plan, that that part of the building was "improperly constructed". The appellate court held that this theory was not enough to carry the case to the jury since the contractor "was justified in relying upon the experience and skill of the architect and supervising engineer", and "There was nothing to show that the plans and specifications were so obviously defective that a contractor of average skill and ordinary prudence would not have attempted the construction according to the plans." There are no allegations here sufficient to show that the casket display building was so obviously defective that a seller of heating equipment should have foreseen that it would leak.

*Judgment affirmed, with costs.*