MYERS ET UX. *v.* MONTGOMERY WARD & CO., INC., ET AL.

[No. 210, September Term, 1968.]

*Decided May 1, 1969.*

284

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Norman H. Heller* for appellants.

*Albert T. Blackwell, Jr.*, with whom were *Couch, Blackwell & Miller* on the brief, for the appellees.

SINGLEY, J., delivered the opinion of the Court.

In May 1966, Mr. Myers, a plaintiff below and an appellant here, purchased a rotary power mower from the defendant-appellee, Montgomery Ward & Co., Inc. (Ward), which had been manufactured by the other defendant-appellee, MTD Products, Inc. (MTD). About a year later, while cutting the grass on a slope of his lawn, Mr. Myers slipped and fell; his foot found its way under the mower; and he was severely injured by the whirling blade.

Myers and his wife sued Ward and MTD in the Circuit Court for Prince George's County. The declaration contained four counts directed against Ward and an identical set of counts directed against MTD:

## "COUNT ONE

### (Negligence)

"Plaintiff, Harold Myers, through counsel, sues the defendant Montgomery Ward and Company, Inc., for that, on or about May 8, 1966, defendant, through its agents, servants or employees, sold to the plaintiff, as a product of Montgomery Ward and Company, Inc., a negligently, carelessly and dangerously designed gasoline powered rotary blade lawnmower, known as the 'Garden Mark Lawnmower', and on, to wit, May 10, 1967, while plaintiff was using said lawnmower to cut the grass in his yard, the very use for which it was intended, as the result of the negligent and dangerous design of said lawnmower plaintiff received serious, painful, permanent disabling injuries to his left foot.

"Prior to offering the aforesaid lawnmower for sale to plaintiff, defendant owed a duty to plaintiff to ascertain that it was designed and equipped so it could be used safely for its intended purpose, a duty to provide a control on the handle known as a 'dead-man' control which would, when released, stop the operation of the rotary blade under the housing, a duty to provide an adjustable plate to the housing of the lawnmower so that high grass could be cut without raising the hous-

ing, a duty to provide a vertical adjustment on the cutting blade so that it could be raised or lowered without increasing the height of the protective housing and so as to keep the protective guard at a constant level regardless of the height of the blade, and a duty to warn that when wheels are lowered that there was more exposure between the housing and the ground.

"In spite of the duties owed by defendant to plaintiff, defendant failed to provide adequate guards and take proper precautions in the design of its 'Garden Mark Lawnmower', and failed to warn plaintiff that when the wheels were lowered that the housing would be raised from the ground leaving more exposure for contact.

"On May 10, 1967, plaintiff, preparatory to cutting the high grass in his yard, made the adjustments to the wheels of the 'Garden Mark Lawnmower' so that the cutting edge of the blade was at the next to highest point of adjustment which, at the same time raised the housing of the lawnmower so that the lower edge of the housing was between three and three and one-fourth inches from the ground, which distance was sufficient to permit a foot and shoe under the housing. Plaintiff was mowing a slope from side to side and turning around at the end of one strip in order to return in the opposite direction, slipped on the grass which had been newly mowed, released the lawnmower in order to break his fall and his left foot entered under the housing of the lawnmower when the rotating blade amputated all the toes, fractured all the metatarsal bones and masserated the skin, muscles, nerves and blood vessels in the terminal two inches of his left foot.

\* \* \*

## "COUNT TWO

### (Implied Warranty)

"Plaintiff sues the defendant, incorporating by reference all the allegations contained in Count One of

this Declaration and further alleges that the defendant corporation is, among other items, in the business of selling rotary bladed power lawnmowers and that it had been engaged in such sales for a considerable period of time prior to plaintiff's purchase from the defendant. That he relied upon the expertise, skill and judgment of the defendant's agents, servants and employees to furnish a safely designed lawnmower, fit for the purpose for which it was intended.

"In spite of the defendant's duty to furnish a safely designed lawnmower, defendant supplied a lawnmower which was dangerously designed and unfit for the purpose for which is was intended.

### "COUNT THREE

#### (Strict Liability)

"Plaintiff sues the defendant, incorporating by reference all the allegations contained in Count One of this Declaration and further alleges that on or about May 8, 1966, defendant sold to the plaintiff a 'Garden Mark Lawnmower' in a defective condition unreasonable to plaintiff as the user of said lawnmower; that defendant was and is engaged in the business of selling lawnmowers, and that the lawnmower purchased by plaintiff from the defendant reached plaintiff without change in the condition in which it was sold.

"As the result of the unreasonably dangerous condition of the lawnmower, while using it to cut the grass in his yard, plaintiff received serious, painful, permanent and disabling injuries to his left foot and damages as set out in Count One, herein, for all of which the defendant is strictly liable.

\* \* \*

### "COUNT FOUR

#### (Loss of Consortium)

"Plaintiff, Harold Myers and Plaintiff, Bernice Myers, sue the defendant Montgomery Ward and Company, Inc., incorporating by reference all the allega-

tions contained in Counts One, Two and Three of this Declaration and further allege that they were at the time of both the purchase of said lawnmower and the time of the injuries received by Harold Myers and are now, husband and wife, and that the defendant proximately caused and continues to cause the plaintiffs jointly to suffer loss of consortium to the detriment of their marital relationship without any action on their part contributing thereto."

Ward and MTD concede that the facts alleged in the last paragraph above quoted of Count One and incorporated by reference in the other Counts were well pleaded. For the purposes of a demurrer, the truth of these facts must be admitted.

Both Ward and MTD demurred:

"Come now the defendants, Montgomery Ward and Company, Incorporated and MTD Products, Incorporated * * * and for a demur [sic] to the Declaration filed herein, and to each and every Count thereof state as follows:

"1. The Declaration alleges in Count Three and Count Seven, a set of facts, which under the Maryland Law does not set forth a cause of action, inasmuch as Maryland has not accepted the 'strict liability' theory of liability without fault.

"2. For other reasons to be assigned at the time of the hearing on this Demurrer."

Appended to the demurrer was:

"*Points and authorities:*[1]
*Telak v. Maszczenski,* 237 A. 2d. 434
*Babylon v. Scruton,* 138 A. 2d. 375
*Walker v. Vail,* 101 A. 2d. 210
*Otis Elevator Co. v. Embert,* 84 A. 2d. 876."

---

[1]. Presumably filed in colorable compliance with Rule 505 a of the Seventh Judicial Circuit: "In adversary proceedings, demurrers, motions and other preliminary matters, * * * shall include, or be accompanied by, a memorandum of points and authorities relied on as justifying the action sought. When citing authorities, sufficiently clear reference to the precise page and paragraph shall be made, including appropriate quotations."

The demurrer was sustained as to both defendants on all counts without leave to amend, and Mr. and Mrs. Myers have appealed from the order sustaining it, assigning four reasons why it should have been overruled:

i. The demurrer failed to comply with Maryland Rule 345 b, and the lower court erred in not overruling it as to Counts other than Three and Seven;

ii. The declaration alleged facts which if proved would have been sufficient to take the case to the jury on the question of negligence in the design of the mower;

iii. The declaration alleged facts which if proved would have been sufficient to take the case to the jury on the question of breach of implied warranty;

iv. The declaration alleged facts which if proved would have supported a verdict against the seller and manufacturer of the mower on grounds of strict liability.

We shall consider Myers' contentions in order.

i.

*Did the demurrer comply with Maryland Rule 345 b?*

The demurrer which Myers challenges can scarcely be regarded as a model of draftsmanship. Rule 345 b provides: "A demurrer shall, in addition to complying with Rule 301 (Form and Contents) in so far as the requirements thereof are applicable, state in detail the question of law or insufficiency of substance upon which the demurrer is founded." While the demurrer purported to reach "each and every Count" of the declaration, it particularized but one question of law and cited Maryland cases in an effort to support only this single point. It was valid, therefore, only to the extent of its specificity. *Baltimore County v. The Glendale Corp.*, 219 Md. 465, 150 A. 2d 433 (1959).

The court below, in response to a motion made by Myers, filed a "statement of the grounds for its decision" as required by Rule 18 c. It is quite apparent, although the court did not so state in its memorandum, that the demurrer was treated as if it had been a motion for summary judgment filed under Rule 610, since the court addressed itself to each of the alternative legal theories advanced by the declaration. A motion for summary judgment

can be made by a party at any time in a proceeding, Rule 610 a 1; *Cox v. Sandler's, Inc.,* 209 Md. 193, 120 A. 2d 674 (1956), when it appears that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A court may enter summary judgment of its own motion, Rule 610 d 1; *Hunt v. Montgomery County,* 248 Md. 403, 237 A. 2d 35 (1968), and the granting of summary judgment on a motion which is defective in form is not reversible error if there is no genuine dispute as to any material fact, *Fletcher v. Flournoy,* 198 Md. 53, 81 A. 2d 232 (1951).

Although the demurrer, as drawn, reached only the question of strict liability, we cannot say, for reasons which will be hereafter developed, that the court erred when, in effect, it entered judgment for the defendants for costs. The truth of the well pleaded facts was conceded by Ward and MTD. The allegations with respect to negligence, implied warranty and strict liability, as we see it, were conclusions of law, within the competence of the court. In argument before us, counsel for Myers admitted that the facts could not have been supplemented, had the demurrer been sustained with leave to amend.

### ii.

*Were there facts alleged from which a jury could have found that the injury was the result of a negligent breach of duty in the design or manufacture of the mower?*

In Count One of his declaration, Myers alleges that Ward was under a duty to ascertain that the mower had been

"* * * designed and equipped so it could be used safely for its intended purpose, a duty to provide a control on the handle known as a 'dead-man' control which would, when released, stop the operation of the rotary blade under the housing, a duty to provide an adjustable plate to the housing of the lawnmower so that high grass could be cut without raising the housing, a duty to provide a vertical adjustment on the cutting blade so that it could be raised or lowered without increasing the height of the protective housing and so as to keep the protective guard at a constant level re-

gardless of the height of the blade, and a duty to warn that when wheels are lowered that there was more exposure between the housing and the ground."

Count Five attempted to impose similar responsibility on MTD.

As was pointed out below, the sufficiency of a declaration in negligence must be tested against the criteria set forth in *Walter Brooks Bradley, Inc. v. N. H. Yates & Co.*, 218 Md. 263, 268, 146 A. 2d 433 (1958) :

> "* * * If a plaintiff is to have a right of action in negligence against a defendant, there must exist a duty which is owed by that defendant to that plaintiff to observe that care called for by the circumstances, and a breach of that duty which caused damage. * * * If the facts alleged in the declaration would lead reasonable men to unite in the conclusion that defendant had violated no duty owed the plaintiff, the court may declare as a matter of law that the declaration is insufficient to state a cause of action despite words therein which allege negligence, as a conclusion of the pleader. * * *"

This Court, speaking through Judge Barnes in *Read Drug & Chemical Co. v. Colwill Constr. Co.*, 250 Md. 406, 243 A. 2d 548 (1968) said:

> "The basic requirement for allegations in a declaration appears in Maryland Rule 301 c which states that it contain 'a clear statement of *facts* necessary to constitute *a cause of action* * * *.' (Emphasis supplied.) Our predecessors have held that a declaration in order to state a cause of action for negligence must allege, with certainty and definiteness, facts and circumstances sufficient to set forth (a) a *duty* owed by the defendant to the plaintiff, (b) a *breach* of that duty and (c) injury *proximately resulting* from that breach." (Emphasis in original.) 250 Md. at 412.

and went on to point out that allegations sufficient to state a cause of action for negligence in a simple factual situation may

vary widely from those required in more complex factual situations and quoted Kaiser, *Pleading Negligence in Maryland—Res Ipsa Loquitur as a Rule of Pleading,* 11 Md. L. Rev. 102 at 104 (1950) in support of the rule that while a general averment of negligence following a simple statement of the defendant's act or omission may be adequate in simple situations, in more complex situations where the breach of duty is not readily apparent, an averment of negligence will be regarded as a mere legal conclusion, since the general characterization of an act or omission as negligent or of a condition as unsafe is not usually a sufficient statement of the supposed ground of liability. *See, Livingston v. Stewart & Co., Inc.,* 194 Md. 155, 159, 69 A. 2d 900 (1949) ; *Phelps v. Howard County,* 117 Md. 175, 177, 82 A. 1058 (1912) ; *State, use of Jeter v. Schwind Quarry Co.,* 97 Md. 696, 55 A. 366 (1903).

It has been more than a decade since the advent of the rotary mower, and, by now, most of us must realize that it has brought new perils to modern life. If further proof is needed, it can be found in the spate of litigation which has reached the courts. *See,* for example, the cases collected in Annot., 80 A.L.R.2d 598 at 663 (1961) ; *E. J. Pontifex v. Sears, Roebuck & Co.,* 226 F. 2d 909 (4th Cir. 1955) and *Kientz v. Carlton,* 245 N. C. 236, 96 S.E.2d 14 (1957) which held that the injured plaintiff had not met the burden of proving the negligence of the seller or manufacturer; and *Lowe v. Taylor Steel Products Co.,* 373 F. 2d 65 (8th Cir. 1967) which affirmed a jury's finding that selling a lawnmower which lacked the safety features that other or newer models might have was not a breach of duty that amounted to negligence. *Murphy v. Cory Pump Supply Co.,* 47 Ill.App.2d 382, 197 N.E.2d 849 (1964) held, as a matter of law, that there was no duty on the manufacturer to provide a guard in front of the rotary blade, that the mower functioned properly for the purpose for which it was designed, and that the injury was the result of the supervening act of a third person. Other cases have denied recovery when no latent defect was alleged and proved: *Siemer v. Midwest Mower Corp.,* 286 F. 2d 381 (8th Cir. 1961) ; *McMeekin v. Gimbel Bros., Inc.,* 223 F. Supp. 896 (D.W.D.Pa. 1963) ; and *Hays v. Western Auto Supply Co.,* 405 S.W.2d 877 (Sp.Ct.Mo. 1966).

Still others have held that whether a mower is properly designed is a question for the jury. *Ilnicki v. Montgomery Ward & Co.,* 371 F. 2d 195 (7th Cir. 1966); *Swearngin v. Sears, Roebuck & Co.,* 376 F. 2d 637 (10th Cir. 1967); *Vroman v. Sears, Roebuck & Co.,* 387 F. 2d 732 (6th Cir. 1967).

We find no error in the lower court's determination that whether the maker or supplier of the mower was under a duty to provide the protective features, as Myers contends, was a question of law, *Walter Brooks Bradley, Inc. v. N. H. Yates Co., supra.* The manufacturer of a mower is not an insurer, and is under no duty to make an accident proof product, *Oropesa v. Huffman Mfg. Co.,* 9 Ohio App.2d 337, 224 N.E.2d 530 (1965). No cause of action is made out in the absence of an allegation that the injury was caused by a latent defect not known to the plaintiff or a danger not obvious to him, which was attendant on proper use, and that the manufacturer was under a duty to correct or prevent that defect or warn him of the peril, at least where injury is foreseeable and probable, *Katz v. Arundel-Brooks Concrete Corp.,* 220 Md. 200, 203, 151 A. 2d 731 (1959), and cases cited, or that the article was unsafe for the use for which it was supplied, *Babylon v. Scruton,* 215 Md. 299, 303, 138 A. 2d 375 (1958). "There is certainly no usual duty to warn the buyer that a knife or axe will cut, a match will take fire, dynamite will explode, or a hammer will mash a finger," Prosser, *Torts* (3d Ed. 1964) § 96 at 666-67. "We think it would be as unreasonable to require every supplier of concrete to warn of its caustic properties, as to require an electric company to warn of the danger of touching uninsulated wires", *Katz, supra,* 220 Md. at 204. It seems to us that Myers' argument that there was a negligent breach of duty in not so designing a mower that it would be impossible for the blade to cut anything but grass was clearly a conclusion of law. *Compare Levin v. Walter Kidde & Co.,* 251 Md. 560, 248 A. 2d 151 (1968) *with Twombley v. Fuller Brush Co.,* 221 Md. 476, 158 A. 2d 110 (1960) and *see also,* Restatement, *Torts* 2d (1965) § 388, particularly Comment k at 306; §§ 391, 395, 398.

*Kientz v. Carlton,* 245 N. C. 236, 96 S.E.2d 14 (1957) presented a set of facts almost identical with those before us. The plaintiff, who was using a Craftsman rotary mower to **cut grass**

on an embankment, slipped and was injured when his foot went under the mower. Suit was instituted against his employer, and Sears, Roebuck & Co., the supplier of the mower, was joined as a defendant. The plaintiff alleged that the mower was inherently dangerous because it had no control on the handle which enabled the operator to stop the motor, no safety clutch, and no guard. At the conclusion of the plaintiff's case, an involuntary nonsuit was entered. The Supreme Court of North Carolina affirmed, saying:

> "The absence of the several alleged safety features was obvious, not latent. Injury alleged to have occurred because of the absence of a guard or stopping device on an 'onion topping' machine was involved in Campo v. Scofield, 301 N. Y. 468, 95 N.E. 2d 802, 803. The basis of decision, supported by the authorities cited, is epitomized in these excerpts from the opinion of Judge Fuld: 'The cases establish that the manufacturer of a machine or any other article, dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and concealed dangers * * * since the duty owed by a manufacturer to remote users does not require him to guard against hazards apparent to the casual observer or to protect against injuries resulting from the user's own patently careless and improvident conduct, the complaint was properly dismissed.' * * * Absent an express warranty, certainly no greater duty would rest upon the seller than upon the manufacturer of such a machine.

* * *

> "It is common knowledge that the various models of power mowers differ in size, weight, design, safety devices, etc., and that new models constantly come into the market, and that purchasers select according to their choice and the price of the respective models. No law of which we are aware requires that a merchant sell only the latest models or those having specified safety features. Pontifex v. Sears, Roebuck & Co., 4

Cir., 226 F. 2d 909." *Kientz v. Carlton, supra,* 96 S.
E.2d at 18.

### iii.

*Were there facts alleged from which a jury could have found
that an implied warranty had been breached?*

Myers relies on Code (1957, 1964 Repl. Vol.) Art. 95B §§
2-314 and 2-315 (Uniform Commercial Code) as authority for
the proposition that there were implied warranties of merchant-
ability and of fitness. While we agree with this, we do not agree
with Myers' contention that the warranty of fitness was not sim-
ply a warranty that the mower was fit to cut grass, as the lower
court found, but additionally a warranty that it was fit to cut
grass *safely* under all circumstances. He supports this conten-
tion by analogizing the warranty of wholesomeness which was
implied in the sale of foodstuffs in *Vaccarino v. Cozzubo,* 181
Md. 614, 31 A. 2d 316 (1943). *See also, Twombley v. Fuller
Brush Co., supra,* 221 Md. 476.

Hawkland, *A Transactional Guide to the Uniform Commer-
cial Code* (1964) § 1.19020702 discusses this problem:

> [Art. 95B § 2-314 (c)] "* * * tends to overlap the
> warranty of merchantability with that of fitness for the
> purpose. We have seen that a seller is obligated to pro-
> vide goods which meet the buyer's particular purpose
> as made known to the seller. Under this warranty, the
> buyer need not communicate to the seller the partic-
> ular purpose for which the goods are intended, if the
> circumstances are such that the latter has reason to
> know that purpose. For example, one buying an auto-
> mobile impliedly makes known the particular purpose
> for which the goods are intended—transportation. If
> the automobile will not run, both the warranties of fit-
> ness for the purpose and merchantability are breached,
> for such a defective car is not of fair average quality,
> nor is it fit for the purpose as impliedly made known
> to the seller. If, however, a special or unusual purpose
>
> is intended, the buyer must bring this knowledge to the
> attention of the seller to obligate him to provide goods
> meeting this requirement. Thus, if the buyer wants an

automobile for speedracing purposes, he must convey
this information to the seller in order to obligate the
latter with respect to the warranty of fitness for the
purpose. Under the U.S.A. [Uniform Sales Act], if
the seller delivered a fair average car that was not
fit for speedracing, there was a tendency to find that
only the warranty of fitness for the purpose had been
breached. This tendency is reversed by subsection (c),
which makes it clear that where actual knowledge of
the particular, special purpose is brought home to the
seller, he breaches both the warranty of fitness for the
purpose and merchantability by supplying goods that
do not permit the buyer to realize the purpose intended.
This extension is important in cases in which a dis-
claimer is directed only at the warranty of fitness, leav-
ing un-negated the warranty of merchantability." at
68

What this means to us is that there was an implied warranty
that the mower was fit to cut grass safely when it was used in
a normal manner, not that Myers would not be injured when he
fell on the slope, and his foot slipped under the mower.

### iv.

*Were there facts alleged which would support a verdict on
grounds of strict liability?*

In this facet of the argument, Myers urges that we adopt the
Rule of Restatement, *Torts* 2d (1965) § 402 A, which articu-
lates the doctrine of strict liability irrespective of fault:

"Special Liability of Seller of Product for Physical
Harm to User or Consumer
"(1) One who sells any product in a defective condi-
tion unreasonably dangerous to the user or consumer
or to his property is subject to liability for physical
harm thereby caused to the ultimate user or consumer,
or to his property, if
   (a) the seller is engaged in the business of selling
such a product, and
   (b) it is expected to and does reach the user or con-

sumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

§ 402 A was the basis of the decision in *Ilnicki v. Montgomery Ward & Co., supra*, 371 F. 2d 195. The same contention was urged on us in *Telak v. Maszczenski*, 248 Md. 476, 237 A. 2d 434 (1968), where we commented on the debate which § 402 A had invoked, and declined to espouse the cause of strict liability at that time. Nor are we prepared to do so in this case. Comment g to 402 A says that the section "applies *only* where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." (Emphasis added)

It is quite obvious that there was no change in the mower from the time Myers purchased it until the day of the accident. It would appear that Myers had used the mower for more than a year, and it is not unreasonable to assume that it functioned properly. Myers does not allege that the accident was the result of an unknown defect in the mower; at most he argues that the accident, caused by his fall and not by an unobserved defect, might have been prevented had the mower been equipped with certain safety devices. This is quite different from the situation in *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P. 2d 897, 13 A.L.R.3d 1049 (1962), relied on by Myers where a defect in design caused a breakdown in the Shopsmith after some hours of use. As we have previously indicated, however, the absence of these safety devices was apparent at the time of purchase, and, in a free market, Myers had the choice of buying a mower equipped with them, of buying the mower which he did, or of buying no mower at all.

For the reasons stated, we find no cause to disturb the result reached below.

*Order affirmed; costs to be paid by appellants.*