883 F.2d 68
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Larry L. HENSLEY, Plaintiff-Appellant,
v.
GENERAL DYNAMICS CORPORATION, General Dynamics Land Systems,
Inc., The Republic of Korea, Defendants-Appellees.
 No. 89-2302.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 11, 1989.
Decided Aug. 14, 1989.
 
 Kurt Anderson (Herbert Sachs on brief) for appellant.
 Raymond Brian Biagini (D. Michael Fitzhugh, Charlotte D. Young, McKenna, Conner & Cuneo on brief) for appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKERSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Larry L. Hensley appeals a final order of the district court granting summary judgment in favor of the defendant, General Dynamics Land Systems (GDLS), in this diversity-based personal injury action. Finding in the discovery record developed below no genuine issues of material fact with respect to the dispositive question of GDLS's alleged liability for Hensley's injuries, we affirm.
 
 
 2
 * At the time of the accident giving rise to this case, the plaintiff was a civilian employee of the United States Army. He worked primarily as an instrument mechanic, which required him to participate from time to time in the testing of new weapons systems.
 
 
 3
 On May 23, 1984, at the Army's Proving Grounds in Aberdeen, Maryland, Hensley and three other civilians served as the crew for a test demonstration of the XK-1 tank, which GDLS designed and developed for the government of the Republic of Korea.[1] Hensley acted as the "loader" for the crew, while the others served, respectively, as the "gunner," "driver" and "commander."
 
 
 4
 The demonstration went awry when, as the tank proceeded down a test track, its cannon struck the side of a large metal ramp. The rear of the cannon, which protruded into the loading compartment where Hensley was stationed, struck the plaintiff in the face on impact, allegedly causing him to suffer severe injuries.
 
 
 5
 Hensley filed this lawsuit on May 2, 1986. He sought $20,000,000 in compensatory damages, charging that he sustained injuries in the May 1984 accident as a direct result of: (1) the defendant's "negligent design" of the XK-1 tank; and (2) GDLS's failure adequately to train the civilian Army employees who operated the tank during the test demonstration. At the close of extensive discovery, the district court granted the defendant's motion for summary judgment, finding that "the Plaintiff has merely produced evidence that the gun struck a metal ramp[,] causing injury to the Plaintiff[,] without any evidence of a mechanical defect and with no credible evidence of a design defect." Hensley v. General Dynamics Land Systems, C/A No. 86-1372, slip op. at 4 (D.Md. November 18, 1988).[2]
 
 
 6
 This appeal followed.
 
 II
 
 7
 We agree with the district court that, taking the evidence in the light most favorable to the plaintiff, Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985), there were on the summary judgment record no genuine issues of material fact with respect to GDLS's liability for Hensley's injuries. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). We have reached that conclusion, however, for reasons somewhat different than those expressed by the district court in its memorandum opinion. The district court implicitly treated this case as one sounding in strict liability; but the plaintiff now characterizes his claim as a "negligence cause of action." Appellant's Br. at 8. We consider that characterization of the design defect and inadequate training claims set out in Hensley's original complaint the accurate one, and we accept it as the proper basis for analysis here. See Joint Appendix at 72-81. That said, however, we remain persuaded that GDLS was nevertheless entitled to prevail on its motion for summary judgment.
 
 
 8
 * Hensley claims that, as a direct result of three separate defects in the design of the XK-1 tank, he suffered "enhanced injuries." He alleges first that, because the XK-1 prototype's loading compartment was too small, occupants would unavoidably suffer severe injuries in the event of a collision between the tank's cannon and any fixed object. Second, he complains that the compartment was not--but should have been--equipped with a seat belt or other restraining device. Finally, he alleges that the tank's design did not allow the "gun turret steerer" to see outside the vehicle. Here, if the gunner had been able to see that the tank was approaching the test track's ramp, he allegedly could have moved the cannon to a "forward position" and avoided the collision.
 
 
 9
 We may assume, arguendo, that these features of the XK-1's design constituted "defects." The difficulty is, however, that they should have been obvious to anyone in Hensley's position. Under Maryland law, manufacturers are liable for defects in design which, if an accident occurs, result in "enhanced injuries"--but only if the manufacturer could have foreseen that result and the alleged defects were not "patent or obvious to the user." Volkswagen of America, Inc. v. Young, 272 Md. 201, 321 A.2d 737, 745 (1974). See also Patten v. Logemann Bros., 263 Md. 364, 283 A.2d 567, ---- (1971); Myers v. Montgomery Ward & Co., 253 Md. 282, 252 A.2d 855, 862 (1969).[3] Here, Hensley stipulated that "[t]he size of the crew stations in the [prototype] tank were obvious to its occupants," and that "the size of the loader's station was obvious to the plaintiff." Joint Appendix at 85. Moreover, though the plaintiff did not also stipulate that the absence of restraining devices and the gunner's inability to see outside the tank were also "obvious," we think Hensley cannot seriously contend that, to someone in his position, they were not. Hensley testified at his deposition that he was familiar with the operation of "ten to fifteen" different armored vehicles, and that he had participated in a number of training sessions for the testing crews of those tanks. Indeed, he now concedes that he "had been involved in [the] testing [of] tanks for an extended period of time," and that he "was aware of the circumstances and condition of his location in the tank." Appellant's Br. at 8.
 
 
 10
 In the face of such a broad concession, we see no genuine issue of material fact with respect to the dispositive question of whether the alleged defects in the XK-1 tank would have been "obvious" to the average layman--much less to one of the plaintiff's knowledge and experience. We must therefore affirm the district court's entry of summary judgment for defendants on each of Hensley's "design defect" claims.
 
 B
 
 11
 For similar reasons, plaintiff's separate claim that GDLS failed adequately to train the crew of the prototype tank was also properly dismissed on summary judgment. Here again, Hensley conceded the heart of his case. He stipulated that he "felt adequately trained and qualified as a crew member of the XK-1 on the day of the accident," Joint Appendix at 85, and testified to the same effect at his deposition. Id. at 87-88. Each of the other members of the testing crew averred in affidavits that they considered the XK-1 training program adequate. Id. at 116-17. Hensley draws our attention to no contrary evidence in the record, and indeed fails to identify with any precision how it is that GDLS's training was deficient. This compels affirmance of the district court's summary judgment for defendants on Hensley's inadequate training claim.
 
 III
 
 12
 For all the above reasons, the judgment of the district court is affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The Korean government apparently insisted that the United States Army conduct all tests of the tank. Army officials agreed to provide the personnel and facilities for tests of two prototypes of the XK-1, but GDLS conducted all training sessions for civilian Aberdeen employees assigned to participate therein
 
 
 [2]
 The district court did not explicitly address Hensley's claim that GDLS failed properly to train the prototype tank's crew
 
 
 [3]
 Hensley's "design defect" negligence theory is confined to the production of "enhanced injuries."