John E. NICHOLS, Jr., Appellee,

v.

WESTFIELD INDUSTRIES, LTD., Van Zetten Implement Co., and Greg Guiter, Appellants.

No. 84–1417.

Supreme Court of Iowa.

Nov. 13, 1985.

Rehearing Denied Dec. 18, 1985.

Michael H. Figenshaw, Marsha K. Ternus, and Lawrence P. McLellan of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant Westfield Industries, Ltd.

Richard C. Bauerle of Johnson, Bauerle, Hester & Walter, Ottumwa, for appellant Van Zetten Implement Co.

Timothy J. McKay and John N. Moreland of McKay & Moreland, P.C., Ottumwa, for appellant Greg Guiter.

Garold F. Heslinga and David D. Dixon of Heslinga, Heslinga & Dixon, Oskaloosa, for appellee.

CARTER, Justice.

Defendants appeal from judgment for plaintiff in a personal injury action alleging theories of strict liability and negligence. All defendants assert on appeal that they were entitled to directed verdicts following trial. Defendants Van Zetten Implement Company and Greg Guiter also claim that the trial court erred in instructions to the jury. We affirm in part and reverse in part.

Plaintiff sustained injuries, including partial amputation of his foot, while unloading grain for his employer, Chillicothe Grain & Livestock Company, on June 16, 1980. He was using a fifty-one foot long auger to transfer corn from a steel bin to a wagon. He slipped from a ledge above the auger, and the resulting fall plunged his foot between the protective bars surrounding the auger and into the revolving auger bit. Defendant Westfield Industries, Ltd. manufactured the grain auger involved in plaintiff's accident in 1974. It was equipped with a removable mesh safety shield. The diameter of the auger was approximately seven inches, and it fit within an eight-inch sleeve. When the shield is not attached, the auger is encased within a framework of metal bars spaced approximately three and one-third inches apart. When the safety shield is attached, it keeps persons and objects at a somewhat greater distance from the auger bit than the protective bars. It serves to superimpose a grid framework over the protective bars with openings approximately two and three quarters inches by three inches. The photographs shown below were used in evidence at the trial and depict the auger as it appears both with and without the safety shield.

Defendant Van Zetten Implement Company, a Westfield dealer, sold the auger to defendant Greg Guiter, a farmer, in September of 1974. At the time of a 1975 design change to a safety shield which is welded in place, Westfield instituted a recall program involving, first, contacting its dealers to obtain names of purchasers of pre-1975 augers and, second, contacting those purchasers in order to offer a safety package designed to bring the auger up to 1975 standards.

Westfield wrote Van Zetten on two occasions requesting the names and addresses of persons who had purchased augers. Van Zetten forwarded the name of only one customer who was not Guiter, although

Guiter's name was in Van Zetten's files as a purchaser of a Westfield auger. Guiter never learned of the recall program.

Guiter's auger was damaged by a grain truck in a manner causing the detachable shield to come off. He never replaced the shield and later sold the auger in 1979 to the employer of plaintiff John E. Nichols, Jr. without the shield and without informing the buyer that the machine had been originally sold with a safety shield attached.

Plaintiff's action at law was submitted to the jury on theories of both strict liability and negligence as to defendants Westfield and Van Zetten, and on negligence only as to defendant Guiter. Instruction No. 22 related to the defense of assumption of risk. It provided as follows:

> You will first consider this affirmative defense before considering any other claim in this case. If the defendants have established by a preponderance of the evidence (1) that John E. Nichols, Jr., knew of the defect and was aware of the danger associated with using the auger without a shield and (2) that he nevertheless voluntarily and unreasonably proceeded to place himself in a position of hazard or risk related to his use of the auger, then your verdict should be for the defendants. If the defendants fail to establish one or both of the foregoing propositions, then you should proceed to consider whether or not plaintiff is entitled to recover in accordance with other instructions given to you herein.

The jury returned a special verdict stating that defendants Westfield and Van Zetten had established the defense of assumption of the risk as defined in Instruction No. 22.

As a result of the special verdict no recovery was permitted on the strict liability claims. On the negligence claims the jury found negligence on the part of all three defendants and assessed causal negligence as follows: plaintiff—60%; Westfield—15%; Van Zetten—15%; Guiter—10%. Damages were assessed at $500,000 and, based on plaintiff's proportionate negligence, judgment was entered against defendants jointly and severally in the amount of $200,000.

The issues which we consider on appeal are the following: (1) whether the court erred in submitting a negligence claim against Van Zetten based on improper design; (2) whether Van Zetten was entitled to a directed verdict; (3) whether the jury's finding on assumption of risk provides a defense to the negligence claims against defendants; (4) whether Guiter was entitled to a directed verdict; (5) whether the court erred in submitting negligence claims against Guiter based on alteration of the auger and failure to warn; and (6) whether legal errors against defendants who are successful on appeal, and which might alter the allocation of causal negligence among the parties, requires a retrial of the claims against another defendant whose arguments on appeal are otherwise unsuccessful. We consider these issues separately. Other facts which are significant in the case will be considered in our discussion of the legal issues which are presented.

I. *Validity of Design Negligence Claims Submitted Against Van Zetten.*

█ In instructing the jury the trial court submitted a specification of negligence for improper design against both the manufacturer Westfield and the dealer Van Zetten. The jury was advised the plaintiff claimed that both were negligent "[i]n failing to properly design the auger intake so as to protect against foreseeable risk of limbs becoming entangled therein during normal use and operation." The jury was asked to determine these claims against both the manufacturer and dealer based on a standard of ordinary care of a reasonably prudent person under the same circumstances. Van Zetten excepted to the instructions permitting the jury to find it negligent for improper design on the ground that such claim was, under applicable law, without support in the evidence. He urges that the giving of such instructions was reversible error.

In *Wagner v. Larson*, 257 Iowa 1202, 1223–24, 136 N.W.2d 312, 325 (1965), we

gave tacit approval to the following commentary on design negligence:

> Design negligence is particularly an area in which it seems difficult ordinarily to find any logical basis for imposing liability upon the retailer in negligence because design certainly in most instances involves questions of specialized knowledge which the retailer cannot be expected to have.

L. Frumer & M. Friedman, *Products Liability* § 18.04 (1960 ed.). We find that the record in the present case is devoid of any evidence from which the design of the auger, if faulty, can be attributed to the dealer Van Zetten. We need not consider whether it might have been proper to submit a negligence claim phrased in terms of the dealer's failure to discover the dangers which the auger, *as designed*, presented. Clearly the jury should not have been permitted, as it was, to find Van Zetten negligent for directly participating in the design of the auger. This was clearly beyond the sphere of the dealer's involvement as shown by the evidence.

Where, as here, the forms of verdict do not reveal the basis on which the jury finds a defendant to be negligent, the submission of a specification which is without support in the evidence requires reversal. *Childers v. McGee*, 306 N.W.2d 778, 780 (Iowa 1981).

II. *Whether Van Zetten Was Entitled to a Directed Verdict.*

In addition to its claim that there is no evidentiary support that it negligently designed the auger, Van Zetten contends that all other specifications of negligence against it which were submitted to the jury lacked evidentiary support. Based on this contention it argues that the trial court erred in not granting its motion for directed verdict at the close of the evidence. We disagree with this contention.

One of the theories under which the claim against Van Zetten was submitted to the jury involved alleged negligence "in failing to take reasonable steps to correct the mesh shield as a part of a factory recall program." Exhibits admitted without objection by Van Zetten included two letters to it from Westfield.

The first letter advises that:

> You may have noted that grain augers have changed considerably over the past few years, especially in the area of safety shielding. This is due largely to groups such as OSHA, ASAE, and FIEI who have conducted studies relating to safety practices on the farm. We have ... incorporated their recommended safety shields into our grain augers.
>
> ....
>
> It seems that now when an end user receives injuries on a grain auger, they will immediately sue anyone connected with the manufacture, sale, or assembly of said auger. It does not matter that the auger involved may be an older machine manufactured prior to the date when safety shielding was adopted by the industry as a whole.
>
> To avoid further lawsuits, our company has decided to make available safety shield packages for all augers sold ... since 1969. We will contact owners of Westfield augers ... offering safety packages at our cost price. This retrofit program will not only protect us but will also protect yourselves in possible future lawsuits....
>
> What we need from you is the name and address of persons you have sold Westfield grain augers.... Please check your invoices and mail to us just as soon as possible the name and address of the customers for these augers.

The président and general manager of Westfield testified that the foregoing letter was mailed to dealers in June of 1975.

When Van Zetten did not respond to the above letter it was sent a follow up inquiry which stated:

> We wrote you sometime ago asking you for the name and addresses of persons who had purchased Westfield grain augers ... from your firm. To date we have not received your reply.
>
> To protect ourselves and our valued dealers, we are offering safety packages for Westfield augers sold in the past.

Please forward a list of your customers' names and addresses for grain augers ... sold by your firm.... We feel this is the best way to avoid costly lawsuits and also help keep liability insurance premiums down.

■ Questions of negligence, contributory negligence, and proximate cause are ordinarily for the trier of fact and even when the facts are not in dispute, if reasonable minds might draw different inferences from the evidence a question of fact is engendered. *Casey v. Koos*, 323 N.W.2d 193, 198 (Iowa 1982); *Meade v. Roller*, 212 N.W.2d 426, 429 (Iowa 1973). Judged by this standard we believe the evidence in the present case presents a jury issue concerning Van Zetten's negligence.

In viewing the evidence most favorably to the plaintiff we believe that the jury could have found that Van Zetten should have been alerted by these letters that there was some danger to the users of Westfield augers if they were utilized with the original safety shields. While the thrust of these letters was a warning against lawsuits, damage actions do not ordinarily occur in the absence of injuries sustained in the use of the product. The jury could find that a reasonably prudent dealer, in Van Zetten's situation, would have cooperated in the manufacturer's recall campaign in order to reduce a perceived risk to users of the product. We have recognized that the real basis of negligence is not carelessness, but behavior which should be recognized as involving an unreasonable danger to others. *Rinkleff v. Knox*, 375 N.W.2d 262, 268 (Iowa 1985); *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 913 (Iowa 1975).

The jury could infer that had Van Zetten supplied Guiter's name to Westfield this would have produced a chain of events resulting in a safety shield welded in place on the auger at the time it was sold to plaintiff's employer. We conclude that these several inferences, if drawn by the jury, are sufficient to support a finding that Van Zetten was negligent in failing to cooperate in the recall procedure and that

such negligence was a proximate cause of plaintiff's injuries. The trial court did not err in denying Van Zetten's motion for directed verdict.

III. *Whether the Jury's Special Verdict on Assumption of Risk Precludes Plaintiff's Recovery on a Negligence Theory.*

■ All defendants urge on appeal that the jury's finding with respect to the defense of assumption of risk precludes recovery by plaintiff on his negligence claims as well as his strict liability claims. The basis for this argument is a contention that the form of the instruction on assumption of risk which was used by the trial court presented that doctrine in its "primary" meaning. Defendants now argue that because the doctrine embodied in the primary meaning of assumption of risk was not eliminated as a bar to recovery in negligence cases by *Rosenau v. City of Estherville*, 199 N.W.2d 125, 131 (Iowa 1972) we should apply that doctrine as a bar to plaintiff's recovery in the present case.

We reject defendants' contentions for several reasons. First, it is clear from the record that, prior to the verdict of the jury, defendants made no effort to have assumption of risk presented in the instructions as a defense to the negligence claims. We believe it is equally clear that the trial court's instructions did not present assumption of risk to the jury as a defense to the negligence claims.

Although Instruction No. 22 contains language which, in isolation, provides that if defendants establish their assumption of risk defense "then your verdict should be for the defendants," a contextual analysis of this instruction with respect to the other instructions suggests that this language was meant to apply to only the strict liability claims. Several factors support this conclusion. As the instructions are arranged, Instruction No. 22 is located among those instructions dealing with the strict liability claims. In describing the type of claims for which the defense precludes recovery, the instruction alludes to "injuries sustained because of defects or dangerous con-

dition," which are the primary elements of a strict liability claim. In addition, the special verdict form on assumption of risk refers only to Westfield and Van Zetten, the defendants against whom the strict liability claims were made and not to Guiter against whom no such claim was lodged.

Instruction No. 11 and Instruction No. 12 which are the marshalling instructions on the negligence claims advise the jury that if it is established that any of the defendants were negligent and that such negligence was a proximate cause of plaintiff's injuries "then plaintiff is entitled to recover in some amount." The instructions tell the jury not to consider the strict liability claims if it should return an affirmative finding on the matter of assumption of risk but to proceed, in that event, to consider the negligence claims.

Finally, the record shows the following discussion transpired in a colloquy between Guiter's counsel and the court at the conclusion of the parties' objections to instructions:

> [Counsel for Guiter] Your honor, I think I have a duty to point out to the court in connection with the instructions as it might inure to my benefit, in view of Mr. Heslinga's objection made to Instruction No. 22. I don't think the defendant, Guiter, is entitled to the benefit of that particular affirmative defense in relationship to the negligence claims pleaded against unless I don't understand the instructions. Unless you really are not talking about the defendant, Guiter, in connection with that instruction.
>
> The Court: *Assumption of risk. That instruction is referred to in the verdict form as relating only the issue of strict liability as goes to Westfield and Van Zetten.*

(Emphasis added.)

Defendants' present claims on the doctrine of assumption of risk must be perceived as an afterthought presented for the first time in their motions for new trial. We have said that "theories which were never submitted to the jury may not be utilized by the court in post-trial motions to resurrect a verdict based on [other] grounds." *Carter v. MacMillan Oil Co.,* 355 N.W.2d 52, 55 (Iowa 1984).

In rejecting defendants' contentions on this ground we are not suggesting that the trial court's instruction on assumption of risk did present that doctrine in its "primary" meaning as understood and applied in *Rosenau,* 199 N.W.2d at 131. Primary assumption of risk is not an affirmative defense. It is "an alternative expression for the proposition that defendant was not negligent, *i.e.,* either owed no duty or did not breach the duty owed." *Id.* at 131. It is based on the concept that a plaintiff may not complain of risks that inhere in a situation despite proper discharge of duty by the defendant. *See Parsons v. National Dairy Cattle Congress,* 277 N.W.2d 620, 622 (Iowa 1979). Primary assumption of risk is merely a label for denying that a duty existed or that a duty was breached. *Id.*

Whether the court's instruction was correct is not an issue. The instruction, whether correct or not, was obviously an instruction on assumption of risk in its secondary meaning because it asks the jury to find whether plaintiff acted unreasonably in assuming a particular risk. *See Rosenau,* 199 N.W.2d at 131. Thus, pursuant to holding in *Rosenau,* the defense was unavailable to defendants on plaintiff's negligence claims. *Id.* at 133. This is true despite our adoption of comparative negligence. *See Campbell v. Van Roekel,* 347 N.W.2d 406, 410 (Iowa 1984).

We thus find that plaintiff was not barred from recovery on his negligence claims by the jury's finding of assumption of risk on the strict liability claims.

IV. *Whether Guiter Was Entitled to a Directed Verdict.*

The claims made against the defendant Guiter were based on alleged negligence. The trial court permitted the jury to consider whether he was negligent in two particulars, *i.e.,* in altering the auger "so as to adversely affect safety features" and in

"failing to warn of ... such alterations or changes."

The evidence viewed most favorably to the plaintiff reveals that when Guiter purchased the Westfield auger from Van Zetten in September of 1974 he perceived that the detachable mesh shield was a safety feature. He described its purpose as being "to keep people from getting their personals caught in the augering mechanism." In his own use of the auger he regularly made sure that the shield was attached until it was accidentally damaged when the box of a dump truck borrowed from the Chillicothe Grain and Livestock Company closed down on it bending it in such a way as to make it impossible to thereafter attach it to the auger.

Guiter continued to use the auger without a safety shield for perhaps two years after the shield was damaged. In March of 1979 he sold it without a shield to the Chillicothe Grain and Livestock Company, plaintiff's employer. He did not inform the buyer that the auger had originally been sold with a shield or that there was a shield mechanism available for use on the auger.

Plaintiff seeks to establish from these facts a liability claim against Guiter under the doctrine recognized in Restatement (Second) of Torts section 388 (1965):

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

We have generally approved the standard of care recognized by this section of the Restatement in *Rinkleff*, 375 N.W.2d at 267; *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 188 (Iowa 1982); and *West v. Broderick & Bascom Rope Co.*, 197 N.W.2d 202, 209 (Iowa 1972). Plaintiff correctly points out that under comment c of this section of the Restatement the liability imposed by section 388 extends to "any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it." It is not limited to persons for whom the supplying of such chattels is a business or occupation.

While we agree that the Restatement rule applies to this casual sale of farm machinery we do not believe that its application to the present facts will support a finding of liability on Guiter's part on either the alteration claim or the failure to warn claim. The alteration of the shield, if it may be called that, was not an occurrence which presented a danger to third persons during the time the auger remained in Guiter's control. No breach of duty to the plaintiff could have occurred until Guiter supplied the auger to plaintiff's employer in its altered state. At this time, Guiter's duty under the Restatement rule was only to warn of dangers known to him which he had reason to believe would not be realized by persons using the auger.

The evidence of superior knowledge in the present case differs substantially from that which was presented to this court in *West*, 197 N.W.2d at 209. In *West*, the plaintiff was an ironworker who put too much pressure on a sling which snapped causing him serious injury. There was evidence that plaintiff was unaware of the weight limit which the particular sling could safely accommodate. We found such evidence sufficient to raise an issue of fact concerning the necessity of a warning concerning the capacity of the sling.

In the present case, the auger mechanism which caused plaintiff's injuries is completely exposed to view. The danger

it poses when it is in operation to those parts of the human body which might come in contact with it would be obvious to anyone using it. Where risks are known and obvious, there is no need for a warning under the standards provided in section 388. *Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 687–88 (8th Cir.1981) (plaintiff knew or should have known danger of pull-out in gas pipes); *McIntyre v. Everest & Jennings, Inc.*, 575 F.2d 155, 159 (8th Cir.1978) (tipping commode). The plaintiff testified that he had grown up on a farm, had frequently worked around augers, and was aware it would be dangerous to permit his feet or hands to come in close proximity to the "moving part" of the auger.

■ We conclude that, under section 388 of the Restatement, a supplier's duty is to warn of dangers which are not obvious with respect to use of the chattel in the condition in which it is supplied. It does not require the supplier to give information concerning available means for amelioration of obvious dangers, even though it is aware of these means and the party to whom the chattel is supplied is not. *See Myers v. Montgomery Ward & Co.*, 253 Md. 282, 293, 252 A.2d 855, 862–63 (1969) (applying comment k of section 388).

On the present record, we can see no basis on which to conclude that Guiter, who was a farmer making a casual sale of used machinery, possessed superior knowledge over either the grain dealer to whom the machinery was sold or the plaintiff. We find no basis in the present case upon which the jury could have determined that Guiter was negligent. The trial court erred in failing to grant Guiter's motion for directed verdict.

V. *Effect of Reversal as to Guiter and Van Zetten on Plaintiff's Judgment Against Westfield.*

■ The next issue which we must consider is whether the result which we have reached with respect to the judgment against defendants Van Zetten and Guiter requires that defendant Westfield also be granted a new trial for purposes of seeking a reallocation of causal negligence among the parties. Westfield argues that it does.

In *Goetzman v. Wichern*, 327 N.W.2d 742, 754 (Iowa 1982), we said that plaintiff's contributory negligence "shall reduce [plaintiff's recovery] in the proportion that the contributory negligence bears to the total negligence that proximately caused the damages." *Id.* at 754. Westfield now argues that, as a result of our elimination of Guiter completely from the causally negligent parties and our granting of a new trial to Van Zetten on reduced specifications of negligence, the special verdict of the jury no longer presents an accurate assessment as to proportionate fault. As a result, Westfield asserts that it is also entitled to a new trial where the proportions of causal negligence can be realigned among plaintiff and the remaining defendants, who are Van Zetten and Westfield.

The determination of whether plaintiff's judgment against defendant Westfield, an otherwise unsuccessful appellant, should be affected in any way by the reversal obtained on behalf of the two successful appellants raises an issue which we considered in *Christensen v. Sheldon*, 245 Iowa 674, 686, 63 N.W.2d 892, 899–900 (1954). In that case, we recognized the distinction which exists between those cases where judgments against multiple parties are reversed for errors established by all appellants as to certain issues and cases where judgments are reversed as a result of errors committed against some parties but not against others. We indicated that, in a proper case, the reversal of a judgment against all parties for errors committed against only some parties is permissible. Quoting from 5 C.J.S. *Appeal & Error* § 1919, at 1420, we stated that this may occur where "the cause of action is of such a nature that the rights and issues are interdependent *and injustice might result from a reversal as to less than all the parties." Id.* (Emphasis added.) In the *Christensen* case, we concluded that "no valid reason has been presented for a reversal as to all defendants." We reach a similar conclusion in the present case. Al-

though Westfield could conceivably obtain a more favorable result on a retrial, it has failed to establish that any injustice befell it at the original trial as a result of the errors committed against Van Zetten and Guiter. Plaintiff's judgment against Westfield should be affirmed.

## VI. *Proceedings on Retrial.*

Because neither plaintiff nor Van Zetten has mounted any meritorious challenge to the sixty percent allocation of causal negligence to the plaintiff, we conclude that that fact should be deemed established for purposes of a second trial. In addition, we believe that the total amount of plaintiff's damages for purposes of the second trial shall be deemed to be established at $500,000. The only issue remaining for the trier of fact shall be whether Van Zetten was guilty of any negligence which was a proximate cause of plaintiff's injuries. An affirmative finding on this issue will entitle plaintiff to a judgment against Van Zetten for $200,000. A negative finding will result in a judgment for Van Zetten. In the event both Van Zetten and Westfield are ultimately found to be liable to the plaintiff, and an action for contribution is pursued involving the principles established in *Franke v. Junko*, 366 N.W.2d 536, 540 (Iowa 1985), the prior judgments or jury verdicts shall not be deemed to have preclusive effect as to relative fault. It would be unfair to give either judgment that effect in view of the disjunctive manner in which the negligence issues have been tried.

The judgment against defendant Westfield Industries, Ltd. is affirmed. The judgment against the defendant Greg Guiter is reversed with directions that the claims against him be dismissed. The judgment against the defendant Van Zetten Implement Company is reversed, and the cause remanded for a retrial of the negligence claims only against that defendant in accordance with the directions which we have given. The costs of appeal are assessed seventy-five percent to defendant Westfield and twenty-five percent to defendant Van Zetten.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

All Justices concur except UHLENHOPP, HARRIS, LARSON, and WOLLE, JJ., who concur in part and dissent in part.

UHLENHOPP, Justice (concurring in part, dissenting in part).

I concur in the majority opinion except for (1) dismissal of defendant Guiter from the case and (2) apportionment of percentages of fault among the parties, as to which I dissent.

I. The manufacturer of the implement equipped it with two safety devices: protective bars around the auger plus a safety shield. I think a jury could reasonably find that Guiter should have told Nichols' employer about the missing safety shield. With respect to superior knowledge, the difference between Guiter on the one hand and Nichols and his employer on the other is that Guiter knew that the machine had come equipped with both the bars and the shield and that the shield had been removed. But nothing appears to indicate that Nichols and his employer had knowledge of the safety shield, and Guiter did not warn or inform about its removal. I would thus leave Guiter in the case as to that specification. He should have a new trial, however, because the trial court should not have submitted the specification against him of altering the auger. When Guiter had the auger in his possession with the shield removed, no injuries occurred. His causal negligence, if any, was in failing to warn about the removal of the shield when he sold the auger to Nichols' employer. I would thus grant a new trial to both Van Zetten and Guiter as to both the issues of the fault of each of them and their respective percentages of fault, if any.

II. As to apportionment of fault among all the parties found at fault, with the advent of comparative negligence we should try to preserve as many findings in prior verdicts as we can—findings which can be readily separated from the entire case. *Warshany v. Supermarkets General Corp.*, 161 N.J.Super. 515, 523, 391 A.2d

1271, 1275 (1978) (retention of findings as to issues "which can be readily separated from the entire case"). We should take care, however, that we do not swing the pendulum from the traditional full retrial to the other extreme. *Schmatt v. Arenz,* 176 N.W.2d 771, 775 (Iowa 1970).

In this case the finding of the first jury as to Nichols' total *damage* and the finding as to *fault* on the part of Nichols and of Westfield can be readily separated from the case, and those issues need not be retried. But the *apportionment* of the percentages of fault among the parties found at fault cannot be accepted from the first trial because Van Zetten and Guiter are entitled to have their percentages of fault found anew under correct instructions and because the respective percentages of fault of all the parties at fault are interdependent. Thus I would not start the second trial with a specified percentage of fault assigned to any party.

More concretely, the apportionment problem comes down to this. Looking at the whole picture but under incorrect instructions as to Van Zetten and Guiter, the first jury apportioned 60% of the fault to Nichols, 15% to Westfield, 15% to Van Zetten, and 10% to Guiter. Looking at the whole picture on retrial of the allegations against Van Zetten and Guiter, under correct instructions, the second jury may wish to raise or lower the percentages of fault of those two defendants or find no fault at all as to them or one of them. It cannot do so, however, without changing the percentages of some or all of the other parties (possibly including Nichols' percentage), so that altogether the percentages come to 100%. Thus all the percentages should be open to reapportionment on retrial. The majority's holding that the percentages from the first trial shall not be preclusive in a third trial, relating to contribution, implicitly recognizes that the percentages from the first trial cannot be accepted. The nub of this question is that in the present case the issues as to the several parties' *fault* are *independent* but the issues as to their respective *percentages* of fault are *interdependent.*

III. Hence I would hold that on retrial Nichols' total damages are to be taken as $500,000 and Nichols and Westfield are to be taken as at fault in some percentages; and the following issues are to be decided by the jury: whether Van Zetten and Guiter were respectively at fault in some percentages, and the respective percentages of fault of all the parties who were at fault, to a total of 100%.

HARRIS and LARSON, JJ., join in this concurrence and dissent.

WOLLE, Justice (concurring in part and dissenting in part).

I agree with all of the majority opinion which precedes Division VI, concurring in that part of the disposition of this case which affirms plaintiff's judgment against defendant Westfield and dismisses defendant Guiter from the case. I also agree that defendant Van Zetten is entitled to a new trial of plaintiff's claim against it because of error in the instructions submitted to the jury on that claim. I cannot agree, however, with this court's conclusion that certain issues integral to that claim should be deemed established by the outcome of the first trial. I would simply remand this case for a new jury trial between the two remaining parties—plaintiff and defendant Van Zetten—without deciding any issues between them on the basis of the jury's special verdicts in the flawed first trial.

I base my dissent in part on the principles and authorities cited in my dissent last month in *Rinkleff v. Knox,* 375 N.W.2d 262, 269 (Iowa 1985). I still believe we ordinarily should not accept part of a jury's verdict in a comparative negligence case when a new trial is necessary, because the issues of negligence, proximate cause, percentage of causative negligence, and damages are tightly interwoven. I am not as confident as the majority that the instructional error in the first trial on a negligence issue did not impact the jury's deliberations on other issues.

The majority accepts from the first trial the jury's determination of the amount of plaintiff's damages and also its allocation to plaintiff of 60 percent of the total causative negligence. Granted we do not know how the first jury arrived at its damage assessment and allocation of percentages of causative negligence among the four parties involved in that trial. How the jury arrived at its special verdicts is a matter which inheres in the special verdicts. Perhaps the errors in instructions, and error in submission of the case against defendant Guiter, had no effect on the jury's special verdicts on plaintiff's claim against Van Zetten which must be retried. I believe, however, that those errors probably made a real difference in the way the jury decided all issues. The jury's determination of damages, as well as its allocation to plaintiff of 60 percent of the causative negligence, may have been significantly affected by its determination that Guiter was responsible for 10 percent of the causative negligence. Part of Van Zetten's 15 percent of causative negligence may have resulted from the erroneous instruction on negligence. Had the trial court directed a verdict for Guiter and instructed the jury correctly on the claimed negligence of Van Zetten, the jury might well have allocated to plaintiff not 60 percent of the causative negligence but an entirely different percentage, including part or all of Guiter's 10 percent and Van Zetten's 15 percent.

We have said partial retrials should be granted only "with caution." *Schmatt v. Arenz*, 176 N.W.2d 771, 775 (Iowa 1970); *Larimer v. Platte*, 243 Iowa 1167, 1176, 53 N.W.2d 262, 267–68 (1952). One reason that makes sense to me is that not only the instructions on the law but also the evidence presented to the jury in a second trial will likely be considerably different than that presented in the first trial. When the majority locks in the plaintiff's share of comparative negligence at 60 percent, it precludes defendant Van Zetten from having the jury in the second trial shift to plaintiff any of the 25 percent erroneously assessed to defendants Guiter and Van Zetten in the first trial. Van

Zetten successfully challenged the special verdict assessing to it 15 percent of the total causative negligence. We ought not assume that the first jury would have arrived at the same percentage allocation of causative negligence attributable to the plaintiff, or the same damage amount, if correctly instructed on the law. Van Zetten should be allowed a new trial of all issues between these two parties, so the jury in a new trial can properly allocate the plaintiff's share of total causative negligence and also arrive at an independent determination of the plaintiff's damages based on correct instructions and the evidence the parties present in the second trial.

I am also troubled by the fact that we are one step removed from the trial of this action, and the trial court would be in a better position than we to determine in the first instance what issues, if any, need not be retried.

I would remand this case for a new jury trial of all issues involved in plaintiff's claim against defendant Van Zetten, without giving conclusive effect to any part of the verdict of the first jury. Alternatively I would remand the case for a new trial with directions that the trial court determine in the first instance what issues should be retried and what issues, if any, should be deemed established by the special verdicts entered in the first trial.