76931. BLOSSMAN GAS COMPANY v. WILLIAMS et al.
(375 SE2d 117)

SOGNIER, Judge.

Barbara Williams and Richard Moore were severely injured when gas that had leaked from a gas water heater installed in Williams's basement exploded. Williams and Moore, together with Williams's then-husband, Henry Gilbert, brought suit against A. O. Smith Corporation, the water heater manufacturer, Emerson Electric Company, manufacturer of the thermostat installed on the water heater, and the two companies that supplied liquid propane gas for the heater, Reliance Gas Corporation and Blossman Gas Company. The plaintiffs settled their claims against A. O. Smith and Emerson, and those defend-

ants are not involved in this appeal. The jury returned a verdict of $800,000 in compensatory and punitive damages against Blossman, and it appeals.

The record reveals that in September 1983, Williams and Gilbert bought an eight year old gas water heater previously owned by the Reverend John Barr. Appellant supplied liquid propane gas to Barr during 1981-1984, and first sold gas to appellees on August 4, 1984, three weeks before the explosion. The water heater appellees purchased was equipped with a thermostat manufactured by Emerson which was the subject of a recall beginning in late 1980 because the safety valve in the pilot gas control knob on the thermostat tended to stick in the open position, allowing gas to escape and posing a risk of explosion. To effectuate the recall, Emerson mailed a strongly worded notice to liquid propane gas dealers nationwide, and also printed the recall notice in a number of trade publications. In this notice, Emerson requested gas dealers to provide their customer lists so that Emerson could notify owners about the defective thermostats, and offered to reimburse the dealers for any expenses they incurred in replacing thermostats for their customers.

At trial, appellees introduced into evidence twenty-two return mail receipts, which indicated the Emerson recall notices were received at appellant's home and branch offices in December 1980, and also introduced a letter written to Emerson by R. C. Mayer, appellant's vice president and treasurer, in which Mayer requested 60,000 copies of the recall notice and stated appellant would send them to each of its customers in their bills. Easton Weaver, Emerson's recall manager, testified he then mailed the requested notices to appellant, and also sent a follow-up letter to appellant on March 4, 1981, but had no further communication with appellant. Several of appellant's senior executives testified they did not remember the recall effort or the notices Emerson mailed, but they acknowledged regularly reading the trade magazines in which the recall notice was published, and also conceded the company and its branch offices replaced forty-one defective Emerson thermostats, including several within a few miles of appellees' home. There was no evidence appellant ever informed its customers of the recall program, and both Barr and appellees testified they never received any warning of the recall or the defective thermostat.

1. In its first three enumerations, appellant contends the trial court erred by denying its motion for a directed verdict made on the general grounds. Appellant asserts specifically that it owed no duty to appellees because it did not sell or install the water heater and had no knowledge that appellees owned a water heater with a defective thermostat. In support of this argument, appellant relies on cases setting forth the general rule that when a gas water heater installed in a pri-

vate home "is owned and installed by the owner or occupant, the gas company not selling or installing the appliance but merely furnishing gas to it, is not responsible for the condition of the appliance and is not liable to the owner . . . for injuries caused by its defective condition, unless the gas was supplied by the company with actual knowledge on its part of the defective and dangerous condition of the appliance. [Cits.]" *Davis v. Gen. Gas Corp.*, 106 Ga. App. 317, 321 (1) (126 SE2d 820) (1962). Moreover, absent actual knowledge of a defect, a company that merely supplies gas to a water heater owner has no duty to inspect the appliance. *Milligan v. Ga. Power Co.*, 68 Ga. App. 269, 280 (22 SE2d 662) (1942). Thus, appellant argues, because it had no actual knowledge of the defect in appellees' water heater and was under no duty to inspect and discover the problem, it cannot be held liable to appellees.

However, appellees contend these cases are not controlling because their claim was based not merely upon a duty arising from appellant's actual knowledge that appellees owned a defective thermostat or a duty to inspect the appliance when first supplying gas service, but also upon appellant's breach of a voluntarily assumed duty to warn its customers about the defect. Appellees assert that the evidence adduced at trial supports a finding that as a result of appellant's negligent failure to complete its obligations with regard to the recall, appellees and Barr were not notified of the defect in the thermostat, and that appellees' injuries were proximately caused by appellant's failure to warn its customers.

Assuming, without deciding, that appellant's arguments regarding actual knowledge and the duty to inspect are correct, nonetheless we agree with appellees that the evidence authorized a verdict for appellees on the issue of appellant's negligent performance of the voluntarily assumed duty to notify its customers of the recall. " 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' [Cit.]" *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 837 (331 SE2d 899) (1985). " '[T]he law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which an action lies.' " *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 524 (317 SE2d 853) (1984). This principle is further articulated in Section 324A of the Restatement (Second) of Torts, which was adopted by the Georgia Supreme Court in *Huggins v. Aetna Cas. &c. Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980), and which provides: "Liability to Third Person for Negligent Performance of Undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person

or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person . . . ."

In a factually similar case, the Iowa Supreme Court addressed the question of whether a farm implements dealer was liable to a subsequent purchaser of a used auger for failing to warn the prior owner of the manufacturer's recall of the product. In *Nichols v. Westfield Indus.*, 380 NW2d 392 (Sup. Ct. Iowa 1985), the manufacturer had notified the dealer of the recall program and had requested a list of purchasers of the auger, but the defendant dealer did not supply the name of the owner from whom the plaintiff bought the used auger even though his name was in their files, and the prior owner never learned of the recall program and thus never warned the plaintiff. The court held that the jury could have found "that a reasonably prudent dealer, in [the dealer-defendant's] situation, would have cooperated in the manufacturer's recall campaign in order to reduce a perceived risk to users of the product," and concluded that the evidence was "sufficient to support a finding that [the dealer] was negligent in failing to cooperate in the recall procedure and that such negligence was a proximate cause of plaintiff's injuries." Id. at 398 (II).

We concur with the reasoning of the Iowa court. Given the well established principle of Georgia law concerning the duty of volunteers to exercise ordinary care, we hold that when a dealer voluntarily agrees to notify its customers of a product recall and to mail notices provided by the manufacturer, and the evidence discloses that the manufacturer furnished the notices but that the dealer failed to perform its voluntarily assumed task, its negligence in failing to perform this obligation will give rise to a cause of action to one who suffers injuries as a proximate result thereof. Although the dealer is not obligated to conduct the recall program, once it undertakes to do so a duty devolves upon the dealer to exercise ordinary care, and whether it did so under the circumstances is a question for the jury. See generally *Cunningham*, supra; *Housing Auth.*, supra at 523-524 (3) (a); *Cleveland v. American Motorists Ins. Co.*, 163 Ga. App. 748, 751-752 (2) (295 SE2d 190) (1982); *Mixon v. Dobbs Houses*, 149 Ga. App. 481, 483 (254 SE2d 864) (1979).

Nonetheless, appellant argues that even if it was obligated to notify its customers of the recall program, any negligence of appellant in its execution of that duty is not actionable unless there is a causal relation to appellees' injuries, a connection appellant contends was not established by the evidence adduced at trial regarding its failure to send recall notices to its customers. "Negligence which is the proximate cause of an injury is such an act that a person of ordinary cau-

tion and prudence would have foreseen that some injury might likely result therefrom. [Cit.]" *Harris v. Hardman*, 133 Ga. App. 941, 942 (1) (212 SE2d 883) (1975). "The most common test of negligence is whether the consequences of the alleged wrongful act are reasonably to be foreseen as injurious to others coming within the range of such acts . . . . [Cits.]" *Thomas v. Williams*, 105 Ga. App. 321, 326-327 (124 SE2d 409) (1962).

Construing the evidence in favor of appellees, we find that the record contains evidence authorizing a finding that appellees' injuries were a foreseeable consequence of appellant's failure to complete its voluntarily assumed duties with regard to the Emerson recall program. The jury could have found that appellant offered to distribute the recall information, and then could have concluded either that appellant received the shipment of recall notices from Emerson but never mailed them to its customers, or that appellant did not receive the requested notices, but having assumed the duty to notify its customers a reasonably prudent dealer would have contacted Emerson when the notices failed to appear. Additionally, the jury was authorized to infer that had the notices been mailed to appellant's customers, "this would have produced a chain of events resulting in [replacement of the defective thermostat] at the time [the water heater] was sold to [appellees]." *Nichols*, supra at 398 (II). The evidence further authorized the jury to find that the explicit language in the recall notices regarding the risk of explosion from leaking gas would have led a gas dealer of ordinary prudence to foresee that users of appliances equipped with the defective Emerson thermostat could be injured in explosions if they were not notified of the danger, and that appellant's negligence in executing its obligation to so notify its customers, particularly the failure to send a recall notice to Barr, was a direct and proximate cause of appellees' injuries. See *Nichols*, supra at 396-397 (I).

"On appeal, the evidence must be construed to uphold the jury's verdict, and the sole question for determination is whether there is any evidence to authorize the verdict. [Cits.]" *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 254 (1) (342 SE2d 694) (1986). In the instant case, we have found that the evidence adduced at trial authorized the jury to conclude that injury from an explosion of gas leaking from a defective Emerson thermostat reasonably could have been foreseen by appellant, and that appellant's negligent failure to complete its voluntarily assumed duty to distribute the recall notices was the proximate cause of appellees' injuries. Although appellant contends the verdict was against the weight of the evidence, "weighing the evidence is a function for the jury and the trial court, not an appellate court. [Cits.]" *Verde v. Granary Enterprises*, 178 Ga. App. 773 (1) (345 SE2d 56) (1986). We find the evidence was sufficient to

support the verdict, id., and thus find the trial court did not err by denying appellant's motion for a directed verdict. See generally *American Game &c. Music Svc. v. Knighton*, 178 Ga. App. 745, 746 (1) (344 SE2d 717) (1986).

2. Appellant next contends the trial court erred by excluding from evidence the covenants not to sue executed by appellees in favor of the other defendants upon settlement of appellees' claims against them, thus precluding appellant from disclosing to the jury the allegations previously made against the other defendants and from arguing against a "double recovery." " 'While [OCGA § 13-4-81] provides that a covenant never to sue is equivalent to a release, this statute applies to the parties with whom the covenant is made and not to another tortfeasor. A covenant not to sue one tortfeasor will not bar actions against another tortfeasor. (Cits.)' [Cit.] . . . Anything received by way of such covenants not to sue operates as a payment *pro tanto* upon any judgment obtained against appellant. [Cits.]" *American Chain &c. Co. v. Brunson*, 157 Ga. App. 833, 837 (278 SE2d 719) (1981). The record reveals the trial court reduced the jury's verdict by the amount previously paid by the other defendants in settlement, and also allowed appellant to discuss evidence of alleged wrongdoing by other defendants. Thus, the trial court's exclusion of the covenants not to sue did not create a risk of double recovery, and accordingly, there appears no error requiring reversal. See *Ford Motor Co. v. Lee*, 237 Ga. 554, 555-556 (2) (229 SE2d 379) (1976); *Malone v. City of Rossville*, 107 Ga. App. 271, 272 (1) (129 SE2d 563) (1963).

3. The record does not support appellant's contention that the trial court allowed appellees' counsel to "read the law to the jury" during closing argument. The record reveals appellees' attorney did not read verbatim from statutes or cases but instead briefly outlined certain legal principles, which is clearly permitted. "It is counsel's right to state his legal position to the jury; this right is indispensable to an intelligent presentation of his case. [Cits.]" *Garrison v. Rich's*, 154 Ga. App. 663, 664 (3) (269 SE2d 513) (1980). Appellees' counsel merely referred to legal principles the court was planning to charge, and thus there was no error. See id.

4. Appellant next enumerates as error the trial court's failure to give all of appellant's requested charges. This enumeration cannot be considered because the requests to charge do not appear in the record. *Northern Assur. Co. v. Roll*, 176 Ga. App. 893, 895 (7) (338 SE2d 870) (1985).

5. Finally, appellant asserts the trial court erred by charging the jury regarding a National Fire Protection Association regulation concerning odorization of liquid propane gas because the regulation was not admitted into evidence. This enumeration is without merit. The regulation at issue was adopted by the Safety Fire Commissioner pur-

suant to the Georgia Administrative Procedure Act, OCGA § 50-13-1, et seq., see Ga. Admin. Comp. Ch. 129-3-16.06, and thus the trial court was required to take judicial notice of the regulation. OCGA § 50-13-8.

*Judgment affirmed. Carley, J., concurs. Deen, P. J., concurs in the judgment only.*

DECIDED OCTOBER 26, 1988 —
REHEARING DENIED NOVEMBER 8, 1988 — 

*H. Baxter Harcourt, Tina G. Stanford,* for appellant.
*Michael C. Smith, Swearingen, Childs & Philips, Ben B. Philips, Jessie G. Bowles,* for appellees.
*Thomas W. Bennett, Frank J. Beltran,* amici curiae.