David L. CROW, Plaintiff–Appellee,

v.

MANITEX, INC., and The Manitowoc Company, Inc., Defendants–Appellants.

No. 94–1239.

Court of Appeals of Iowa.

April 23, 1996.

David A. Elderkin and Patrick M. Roby of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellants.

Dirk J. Hamel and E. David Wright of Norman, Gilloon, Wright & Hamel, P.C., Dubuque, for appellee.

Heard by HABHAB, P.J., and CADY and HUITINK, JJ.

HABHAB, Presiding Judge.

David L. Crow was injured in an accident involving a truck-mounted hydraulic crane manufactured by Manitex, Inc., a wholly-owned subsidiary of the Manitowoc Company, Inc. L.E. Myers Construction Company, a general contractor, leased the crane and employed Crow at the time of the accident.

The boom of the crane has three hydraulic and two mechanical extensions. The two mechanical extensions of the crane are part of an assembly known as the jib, which folds alongside the boom as extended hydraulically when not in use. The final mechanical extension, called the jib stinger, telescopes out of the jib. When fully extended, it is locked in place by means of a T-bar pin to prevent it from retracting back into place.

At the head of the jib is a semi-permanent stop pin which prevents the stinger from extending totally out of the jib. The stop pin is secured in place by snap rings.[1] Both the stop pin and the T-bar only go through the jib. There are no holes in the stinger. On a properly maintained Manitex truck crane, there is only one choice of holes in which to place the T-bar pin.

The accident occurred as the result of two Myers employees failing to properly pin the extension of the crane known as the stinger. Because a pin was missing, the employees had the choice of two holes to place the stinger pin in and they picked the wrong one. Also, without knowing it was improper, the employees attached a basket to the end of the stinger and attempted to hoist Crow in the air. As a result of the improper pinning, when the employees raised the crane the stinger suddenly retracted. Upon retraction,

the basket attachment broke and the basket and Crow fell to the ground.

Crow brought an action against Manitex, Manitowoc, and several other defendants. He settled with all the defendants except Manitex and Manitowoc prior to trial. The court submitted the matter to the jury on theories of strict liability by reason of the alleged defective design of the crane's pinning system and attachment assembly between the stinger and the basket. Additionally, the court submitted a negligence claim based upon Manitex's failure to warn some users the basket could not be attached to the stinger. The jury returned a verdict in Crow's favor, awarding him $740,000. The court denied Manitex and Manitowoc's motions for judgment notwithstanding the verdict and new trial.

Manitex and Manitowoc[2] appeal.

**I.**

Manitex makes related claims regarding submission of the theories of liability. First, Manitex contends the district court erred in denying the motion notwithstanding the verdict. In reviewing a motion for a judgment notwithstanding the verdict, we consider whether the evidence, taken in the light most favorable to the nonmoving party, shows the movant was entitled to a directed verdict at the close of all the evidence. *McGough v. Gabus*, 526 N.W.2d 328, 334 (Iowa 1995). When reviewing such a ruling, we look to see whether the evidence on an issue was sufficient to generate a jury question. *Id.* Second, Manitex contends there was insufficient proof to support the giving of the instructions on the theories of liability. Parties have a right to have their legal theories submitted to the jury as long as they are supported by the pleadings and substantial evidence. *Anderson v. Low Rent Housing Comm'n*, 304 N.W.2d 239, 249 (Iowa), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1981); *Cerro Gordo Hotel Co. v. City of Mason City*, 505 N.W.2d

1. Testimony was provided the stop pin was intended to be removed only for the replacement of slider pads or to repair physical damage to the stinger. Such work is typically done in a shop environment.

2. Manitex and Manitowoc will be referred to as Manitex in the remainder of the opinion.

509, 511 (Iowa App.1993). Error in giving or refusing to give jury instructions is reversible, only if prejudicial. *Stover v. Lakeland Square Owners Ass'n,* 434 N.W.2d 866, 868 (Iowa 1989).

## II.

Manitex argues it had no duty to warn because the dangers of the Manitex model 1570 were known to the L.E. Myers employees. Manitex cites us to *Nichols v. Westfield Indus., Ltd.,* 380 N.W.2d 392, 401 (Iowa 1985), and Crow cites us to *West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202 (Iowa 1972). In addition, Crow argues that instruction 10(B) (10(B) concerns negligent failure to warn) was properly submitted for it conforms to comment b of section 388 of the Restatement 2d of Torts.

It is clear under Iowa law that when the risks involved are known and obvious, there is no need for a warning under the standard in section 388 of the Restatement. *Nichols,* 380 N.W.2d at 401. As Justice Carter stated in *Nichols* when speaking for the majority of our supreme court:

> We conclude that under section 388 of the Restatement, a supplier's duty is to warn of dangers which are not obvious with respect to the use of a chattel in the condition in which it was supplied. It does not require the supplier to give information concerning available means of amelioration of obvious dangers, even though it is aware of these means and a party to whom the chattel is supplied is not.

*Nichols,* 380 N.W.2d at 401. The risks in this case, by and through the testimony of those witnesses who were directly and indirectly involved in the accident, were readily apparent. Those who were involved were well aware of the danger of mispinning the jib stinger and the possible consequences resulting therefrom. The dangers in this case were not only known but were so readily obvious there was no need for a warning.

Robert Brown, one of the two men doing the pinning, testified they were aware of and had read the cautionary decal on the crane which warned if the crane was not pinned properly the stinger might suddenly retract.

In addition, both the crane operator, Bob Ryan, and Brown testified they used the instruction manual so they would not improperly pin the crane. Given the awareness of the cautionary decal and deliberate attempt to follow the instructions, we find the men in charge of pinning the crane were aware of the danger involved in the pinning process; thus, there was adequate warning of the potential danger that could arise if the crane were improperly pinned.

As it relates to Ryan's testimony concerning the instruction manual, it is clear the manual was in his possession and it was referred to so that they "would pin it right" and "didn't mess up." The employees took some fifteen to twenty minutes in their attempt to properly pin the stinger. They were well aware that if the wrong hole was pinned, a retraction of the stinger could occur snapping the stop pin and injuring the person in the basket. Taking the testimony as a whole, it is clear to us they knew of the possible danger, as well as the consequences stemming from it, and there was really nothing an additional warning could have accomplished.

We agree with appellee that section 388 of the Restatement sets forth a manufacturer's duty to warn those who may be exposed to hazards in the use of its products. However, comment "g" to this section further explains the duty can be discharged if the manufacturer exercises "reasonable care to give those who are to use the chattel the information which the supplier possesses, and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used." Likewise, comment j of section 402A of the Restatement 2d of Torts references failure to warn and adds, in relevant part:

> *Directions or Warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. . . .
>
> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

The crane in question is sold primarily to general contractors and was designed for operators who knew and understood how the machine operated. There was a decal at eye level in the cab of the crane which stated:

### DANGER

#### YOU MUST NOT

OPERATE THIS CRANE UNLESS:

1. YOU HAVE BEEN TRAINED IN THE SAFE OPERATION OF THIS CRANE.
2. YOU KNOW AND FOLLOW THE SAFETY AND OPERATING RECOMMENDATIONS CONTAINED IN THE MANUFACTURER'S MANUALS, YOUR EMPLOYER'S WORK RULES AND APPLICABLE GOVERNMENT REGULATIONS.

AN UNTRAINED OPERATOR SUBJECTS HIMSELF AND OTHERS TO DEATH OR SERIOUS INJURY.

Exhibit 149 is a photograph showing the pinning area of the crane. There is a caution sticker located on the crane which states, "Pull jib stinger until it is fully extended and lock in place with pin. Failure to do so will allow jib stinger to retract suddenly when boom is raised."

In addition, the owner's manual cautions if the jib stinger is not properly locked in place with the pin, the jib stinger would retract suddenly when the boom is raised. The instruction states:

On 900, 1500, 1900, and present production 1100 series, pin (3) cannot be installed until the jib stinger is fully extended.... Pull jib stinger out until it is fully extended and lock in place with pin (3, Figure 4–10). Failure to do so will allow jib stinger to retract suddenly when boom is raised.

We note from the appendix the following warnings appear:

### CAUTION

READ AND UNDERSTAND OWNER'S MANUAL BEFORE STORING OR ERECTING JIB.

### CAUTION

PULL JIB STINGER UNTIL IT IS FULLY EXTENDED AND *LOCK IN PLACE WITH PIN*. FAILURE TO DO SO WILL ALLOW JIB STINGER TO RETRACT SUDDENLY WHEN BOOM IS RAISED.

### DANGER

#### YOU MUST NOT

OPERATE THIS CRANE UNLESS:

1. YOU HAVE BEEN TRAINED IN THE SAFE OPERATION OF THIS CRANE.
2. YOU KNOW AND FOLLOW THE SAFETY AND OPERATING RECOMMENDATIONS CONTAINED IN THE MANUFACTURER'S MANUALS, YOUR EMPLOYER'S WORK RULES AND APPLICABLE GOVERNMENT REGULATIONS.

AN UNTRAINED OPERATOR SUBJECTS HIMSELF AND OTHERS TO DEATH OR SERIOUS INJURY.

The warnings contained in the manual and on the crane itself were more than adequate and reasonably calculated to apprise consumers of the crane's dangerous propensities in the event the warnings and instructions were not heeded. It occurs to us, when a manufacturer expressly warns against using a product in a certain way and the consequence of doing so, it would be expected that an ordinary consumer would not use the product in contravention of the express warning.

Here, the Meyers employees who had the task of extending and pinning the jib stinger knew if the wrong hole was pinned a retraction of the stinger could occur, snapping the stop pin and injuring the person in the basket. They knew well in advance from the caution sign if the stinger was not pinned correctly, it would retract. They also knew if the stinger did retract, it could snap the stop pin or knock the lock off. They knew before they mispinned the stinger "of the dangerous condition of the crane" as well as the "facts which made it likely to be dangerous."

We conclude the trial court erred and accordingly reverse on this issue. For reasons explained later, this cause is remanded for a new trial on the remaining issues where we found no error.

### III.

 Manitex contends there was both insufficient evidence to generate a jury question and insufficient evidence to support the giving of the jury instruction on whether there should be strict tort liability due to an allegedly defective design of the attachment assembly between the stinger and the basket. In order to prevail on its claim of strict liability, Crow was required to show the crane was manufactured by Manitex in a defective condition; the condition was unreasonably dangerous when used in a reasonably foreseeable manner; the crane was expected to reach the plaintiff without a substantial change in condition; the defect was the proximate cause of the injury or damage; and there must be a showing of damages. *Osborn v. Massey–Ferguson, Inc.*, 290 N.W.2d 893, 901 (Iowa 1980).

We find there was sufficient evidence presented to generate a jury question on this issue. David Moravec, the vice president of engineering and development for Manitex, testified regarding an accident which occurred in 1987 at the Manitex plant in McAllen, Texas. The accident involved an older model crane where the stinger retracted, four bolts broke, and the crane head fell off. After the accident, the model 1570 was designed. The 1570 design incorporated the same four bolts system as the old model. The bolts were the same size as in the older model, and there was no shock load testing done after the accident in 1987. Moravec testified the crane head would still probably crash if the stinger retracted.

Evidence was presented that when the stinger retracted, in this case, the attachment assembly sheared off causing the basket to fall to the ground. The jury was also presented with evidence on alternative designs which would be safer, one which was developed by Simon–R.O., a competitor of Manitex's. We conclude there was sufficient evidence to generate a jury question and to submit the jury instruction.

### IV.

 Manitex contends there was both insufficient evidence to generate a jury question and insufficient evidence to support the giving of the jury instruction on whether there should be strict tort liability due to an allegedly defective design of the pinning system. In order to prevail on its claim of strict liability, Crow was required to show the crane was manufactured by Manitex in a defective condition; the condition was unreasonably dangerous when used in a reasonably foreseeable manner; the crane was expected to reach the plaintiff without a substantial change in condition; the defect was the proximate cause of the injury or damage; and there must be a showing of damages. *Osborn*, 290 N.W.2d at 901. If the product has been altered, liability can be found only if the plaintiff can show it is foreseeable the alteration would be made and the change does not unforeseeably render the product unsafe. *Hardy v. Britt–Tech Corp.*, 378 N.W.2d 307, 309 (Iowa App.1985).

Crow contends a jury question was generated by several pieces of evidence. First, there was evidence, Crow contends, which supports the proposition Manitex realized the possibility that if the stop pin were missing, an operator could incorrectly place the stinger pin in the stop pin hole and a retraction of the stinger could take place. Second, Crow points to testimony stating Manitex knew the stop pin would be removed to perform maintenance on the slider pads or if there were damage to the jib or stinger. Third, Crow contends the testimony supports the proposition the stop pin is not difficult to remove. Fourth, Crow argues that since Manitex recommended users of the crane maintain and inspect the cranes on a regular basis, the jury could infer Manitex foresaw the possibility the stop pin could work itself free or could be removed. Finally, Crow argues the allegedly poor pinning instructions and the alleged uniqueness of design is evidence Manitex could foresee the misuse.

We agree with Crow. We find there was sufficient evidence to generate a jury question on whether there was strict tort liability due to an allegedly defective design. Further, we find the misuse in this case was reasonably foreseeable.

### V.

 In conclusion, we find the district court properly submitted jury instructions on the issues of strict liability due to defective design, but erred in submitting the issue of negligence. Where a general verdict of liability results from the submission of two or more theories, one of which contains an error, and it cannot be determined the verdict resulted from a theory which was free from error, the case must be reversed and remanded for a new trial. *See Olson v. Prosoco*, 522 N.W.2d 284, 290 (Iowa 1994). The case must be reversed in part and remanded for a new trial on the remaining issues.

**REVERSED IN PART AND REMANDED FOR NEW TRIAL ON THE REMAINING ISSUES.**